UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| ANA PEREZ-GAMEZ and WILLIAM ORELLANA GAMEZ, | * * * | |
| Plaintiffs, | * * | |
| v. | * * | Civil Action No. 1:14-cv-14121-IT |
| SELECT PORTFOLIO SERVICING, INC. | * * | |
| Defendant. | * | |

MEMORANDUM & ORDER

February 24, 2016

TALWANI, D.J.

Plaintiffs Ana Perez-Gamez and William Orellana Gamez bring this action to prevent the foreclosure of their home mortgage. Defendant Select Portfolio Servicing ("SPS") removed this action from Middlesex County Superior Court and moved to dismiss the Verified Complaint for failure to state a claim. Plaintiffs, in turn, filed a motion for leave to amend the complaint. For the following reasons the Motion to Dismiss [#6] is ALLOWED and the Motion for Leave to File Proposed Amended Complaint [#28] is DENIED.

I.      Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual material "to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 559 (2007)). In considering such a motion the court "construe[s] the well-pleaded facts in the light most favorable to the plaintiff[], accepting their truth and drawing all reasonable inferences in the plaintiff['s] favor." Medina-Velazquez v. Hernandez-Gregorat, 767 F.3d 103, 108 (1st Cir.

2014).  When reviewing a motion to amend for futility, the court applies the same standard as would apply under Rule 12(b)(6).  <u>Glassman v. Computervision Corp.</u>, 90 F.3d 617, 623 (1st Cir. 1999).

II.    <u>Factual Background</u>[1]

Plaintiffs Ana Perez-Gamez and William Orellana Gamez are married and live in the home they own in Somerville, Massachusetts.  Verified Compl. ¶ 1, 4.  Plaintiffs, who spoke no English, were misled to believe that they were entering into a fixed rate mortgage loan.  <u>Id.</u> ¶ 5.  Instead, on January 6, 2006, Plaintiffs entered into an allegedly predatory adjustable rate home loan with Accredited Home Lenders, Inc. ("Accredited").  <u>Id.</u>  Plaintiffs assert that Accredited was Defendant SPS' predecessor.  <u>Id.</u>

Thereafter, on September 24, 2010, SPS entered into a Servicer Participation Agreement with the United States Treasury, in which it agreed to evaluate borrowers under the directives set forth in the federal Home Affordable Modification Program ("HAMP").  <u>Id.</u> ¶ 6.  On March 22, 2014, in an effort to cure a mortgage delinquency as a result of the allegedly predatory loan, Plaintiffs, through counsel, applied for a loan modification by submitting a HAMP application to SPS.  <u>Id.</u> ¶ 7.

Approximately five weeks later, on April 30, 2014, SPS informed Plaintiffs, through counsel, that the mortgage holder for the subject loan, Accredited Mortgage Loan Trust 2006-1 ("AMLT2006-1"), would only consider a repayment plan and not a modification.  <u>Id.</u>  Plaintiffs assert, however, that review of the June 5, 2005 Prospectus Supplement for AMLT2006-1 indicates that there are no loan modification restrictions on the sub-prime loans which constitute the corpus of AMLT2006-1's loans, despite SPS' April 30, 2014 representations.  <u>Id.</u> ¶ 8.

---

[1] The factual allegations in the <u>Verified Complaint</u> [#1-3] and the <u>Proposed Amended Complaint</u> [#28-1] are the same, though distributed over different paragraphs.

Plaintiffs allege that those statements were "intentionally inaccurate and deceptive." Id. ¶ 8. Plaintiffs assert that SPS misrepresented the investor's guidelines in order to foreclose on Plaintiffs' home and obtain lucrative mortgage servicing fees from the coordination of a foreclosure. Id. ¶ 9.

III.    Discussion

1.   Motion to Dismiss Verified Complaint

The Verified Complaint asserts four causes of action against SPS for: (1) violation of Mass. Gen. Laws ch. 93A based on the extension of the allegedly predatory home loan; (2) violation of Mass. Gen. Laws ch. 93A based on the failure to extend a HAMP modification; (3) breach of contract for failure to extend a HAMP modification; and (4) violation of Mass. Gen. Laws ch. 93A for intentional misrepresentation of the AMLT2006-1 investor guidelines.  For the following reasons, the court allows SPS' motion to dismiss these causes of action.

a.   Count I

Count I, based on the allegedly predatory terms of Plaintiffs' loan, fails to state a claim because the Verified Complaint does not allege that SPS was the original lender or its assignee. See Drakopoulos v. U.S. Bank, 991 N.E.2d 1086, 1095 n.16 (Mass. 2013) (holding that assignees of lenders may be liable for equitable remedies based on Chapter 93A violations of the assignor).  Rather, the Verified Complaint alleges that Plaintiffs entered into the loan with SPS's "predecessor" Accredited and that SPS communicated with Plaintiffs' counsel on behalf of AMLT2006-1, "the mortgage holder for the subject loan."  Verified Compl. ¶ 7.  These allegations demonstrate that SPS was the servicer of the loan that was held by AMLT2006-1, not the assignee of Accredited.  Accordingly, Count I fails to state a claim against SPS.

In addition, Count I of the Verified Complaint is time-barred.  Causes of action under Chapter 93A are subject to a four-year statute of limitations.  Mass. Gen. Laws ch. 260, § 5A.  "The general rule is that a cause of action under Chapter 93A accrues when the plaintiff knew or should have known of appreciable harm resulting from the defendant's [actions]."  Maldonado v. AMS Servicing LLC, Nos. 11–40044, 11–40219, 2012 WL 220249, at *5 (D. Mass. Jan. 24, 2012) (quotation marks and citation omitted).  Plaintiffs attempt to claim the benefit of the "discovery rule" by arguing that, due to their inability to speak English and misrepresentations made by the mortgage broker in their native language, they did not and could not have known the loan was predatory until the interest rate began to rise around 2012 and 2014.  Pls.' Opp'n Mot. Dismiss 8 [#10].

"The discovery rule is narrow, generally applying only where the harm itself is 'inherently unknowable.'"  Maldonado, 2012 WL 220249, at *5 (quoting Saenger Org., Inc. v. Nationwide Ins. Licensing Assoc., Inc., 119 F.3d 55, 65 (1st Cir. 1997)).  The rule "delays accrual beyond the time of injury if the plaintiff does not know and could not reasonably know that he or she may have been harmed by the conduct of another."  Id. (quotation marks and citations omitted); see Schwartz v. Travelers Indem. Co., 740 N.E.2d 1039, 1045 (Mass. App. Ct. 2001).  "The factual basis for a cause of action is 'inherently unknowable' if it is incapable of detection by the wronged party through the exercise of reasonable diligence."  Geo. Knight & Co., Inc. v. Watson Wyatt & Co., 170 F.3d 210, 213 (1st Cir. 1999) (quotation marks and citations omitted).

Here, Plaintiffs base their predatory lending claim on a review of the mortgage papers themselves.  See Verified Compl. ¶ 5, Ex. A.  Because the facts underlying Plaintiffs' claim were contained in the mortgage documents, the alleged violation was not "inherently unknowable."

4

See Salois v. Dime Savings Bank of New York, FSB, 128 F.3d 20, 24 (1st Cir. 1997)

("[W]hether negative amortization was inevitable with Impact Loans, the documents contained

all of the information necessary to determine the interaction of Dime's formula with prevailing

interest rates.  It was attorney consultation, rather than newly-discovered information, that

prompted plaintiffs' lawsuit.  Therefore, sufficient facts—indeed, all the facts—were available to

place plaintiffs on inquiry notice of fraudulent conduct."); Broderick v. PNC Fin. Servs. Grp.,

919 F. Supp. 2d 178, 181 (D. Mass. 2013) ("Reasonable inquiry, such as reading the documents,

would have revealed the terms of the loan.  Broderick thus should have know [sic] of her injury

at the time of the loan closing."); Maldonado, 2012 WL 220249, at *5 ("The fact that plaintiffs

did not have the loan 'analyzed' for several years is irrelevant, given that the facts constituting

the alleged violation would have been evident from the loan documentation.").  Accordingly,

Count I of the Verified Complaint is untimely.

> b.  Count III

Count III of the Verified Complaint, alleging breach of the Service Participation

Agreement between SPS and the federal government by SPS' failure to extend a HAMP

modification to Plaintiffs, fails to state a claim because homeowners are not third-party

beneficiaries to a Servicer Participation Agreement.  See Wilson v. HSBC Mortg. Servs., Inc.,

744 F.3d 1, 9 (1st Cir. 2014) ("Put simply, 'borrowers are not third-party beneficiaries of

agreements between mortgage lenders and the government.'" (quoting MacKenzie v. Flagstar

Bank, FSB, 738 F.3d 486, 491 (1st Cir. 2013)).  Accordingly, Count III is dismissed.

> c.  Counts II and IV

Counts II and IV of the Verified Complaint allege violations of Mass. Gen. Laws ch. 93A

based on SPS' failure to extend a HAMP modification (Count II) and SPS' alleged

misrepresentation of the investor guidelines regarding Plaintiffs' eligibility for a modification

(Count IV).  Mass. Gen. Laws ch. 93A, § 2 prohibits the use of "unfair or deceptive acts or

practices."  In determining whether conduct is "unfair," the court looks to "(1) whether the

practice . . . is within at least the penumbra of some common-law, statutory, or other established

concept of unfairness; (2) whether it is immoral, unethical, oppressive or unscrupulous; [and] (3)

whether it causes substantial injury to consumers (or competitors or other businessmen)."  Mass.

Eye & Ear Infirmary v. QLT Phototherapeutics, Inc., 412 F.3d 215, 243 (1st Cir. 2005) (quoting

PNP Assocs. Inc v. Globe Newspaper Co., 321 N.E.2d 915, 917 (Mass. 1975).  Conduct is

"deceptive" if it has "the capacity to mislead consumers, acting reasonably under the

circumstances, to act differently from the way they otherwise would have acted."  Aspinall v.

Philip Morris Cos., 813 N.E.2d 476, 488 (Mass. 2004).

A violation of a statute that does not include a private right of action, such as HAMP,

may nevertheless give rise to a Chapter 93A claim if the violation amounts to an "unfair method

of competition or an unfair or deceptive practice independently prohibited by G.L. c. 93A, § 2,

and if recovery under c. 93A is compatible with the objectives and enforcement mechanisms the

underlying statute contains."   Whitehall Co. v. Merrimack Valley Distrib. Co., 780 N.E.2d 479,

483 (Mass. App. Ct. 2002).  Thus, courts in this district have assessed Chapter 93A claims based

on alleged HAMP violations with the following three-part inquiry:

> (1) have plaintiffs adequately plead that defendant violated HAMP; (2) are those
> violations of the type that would be independently actionable conduct under
> chapter 93A even absent the violation of a statutory provision (i.e. are the
> violations unfair or deceptive); and (3) if the conduct is actionable, is recovery
> pursuant to chapter 93A compatible with the "objectives and enforcement
> mechanisms" of HAMP?

Ording v. BAC Home Loans Servicing, LP, No. 10-10670, 2011 WL 99016, at *7 (D. Mass. Jan.

10, 2011).  In this context, Chapter 93A claims have survived motions to dismiss where the

plaintiff "alleged a pattern of misrepresentations, failure to correct detrimental errors, and/or dilatory conduct on the part of the servicer and/or bank that the courts could have found amount to unfair or deceptive practices, or have involved a servicer's alleged representation that compliance with the [Trial Period Plan] would lead to permanent modification, which thereby induced the homeowners to continue payments when the servicer never intended to modify the loan." Newell v. America's Servicing Co., No. 13-11141, 2013 WL 4805060, at *3 (D. Mass. Sept. 9, 2013) (quotation marks and citations omitted). However, "mere technical violations and clerical errors to support a Chapter 93A claim predicated on HAMP violations" are insufficient. Hanrahran v. Specialized Loan Serv., LLC, 54 F. Supp. 3d 149, 155 (D. Mass. 2014) (quotation marks and citation omitted).

Count II alleges that SPS violated Chapter 93A by failing to extend a HAMP Trial Period, Verified Compl. ¶ 21, and that the HAMP application was denied "under fraudulent pretenses," id. ¶ 22. First, SPS' denial of Plaintiffs' HAMP application by itself is not a violation of Chapter 93A because Plaintiffs have not alleged—apart from the conclusory allegation that SPS was "required to extend a HAMP Trial Period Plan"—that SPS was actually obligated under the Servicer Participation Agreement to extend a HAMP modification. Indeed, the Servicer Participation Agreement attached to the Verified Complaint does not establish that SPS was obligated to modify Plaintiffs' loan, and Plaintiffs point to no other supplemental directives issued by Treasury that set out SPS' obligations. Accordingly, Plaintiffs' allegation that their HAMP application was denied, by itself, fails to establish any unfair or deceptive conduct by SPS and therefore fails as a basis for a Chapter 93A cause of action.

To the extent that Count II is based on the allegation that SPS violated Chapter 93A by denying Plaintiffs' HAMP application under fraudulent pretenses, this overlaps with Plaintiffs'

Chapter 93A claim in Count IV, which is based on SPS' alleged misrepresentation to Plaintiffs that they were not eligible for a loan modification under the governing trust documents.  This allegation is also insufficient to support a Chapter 93A cause of action because Plaintiffs do not allege sufficient facts to establish that the statement regarding the investor guidelines was false, let alone that it was "deceptive."  Specifically, Plaintiffs allege that SPS informed Plaintiffs "that the mortgage holder for the subject loan . . . would only consider . . . a repayment plan and not a . . . modification."  Verified Compl. ¶ 7.  Plaintiffs then allege that review of the June 5, 2005 Prospectus Supplement for AMLT 2006-1 "indicates that there are no loan modification restrictions on the sub-prime loans which constitute the corpus of [the mortgage holder's] loans." Id. ¶ 8.  These allegations are insufficient to allege that SPS' statement was false, because Plaintiffs do not allege that the June 5, 2005 Prospectus Supplement was the sole source of any possible modification restrictions, and it is possible that the mortgage holder decided that it would only consider a repayment plan even though the prospectus supplement contained no loan modification restrictions.  See Edwards v. Aurora Loan Servs., LLC, 791 F. Supp. 2d 144, 151 (D.D.C. 2011) ("Plaintiffs' receipt of a HAMP modification is subject to a series of wholly discretionary decisions. . . .[I]f the loan is investor-owned, the investors must agree to permit modification").  Moreover, because Plaintiffs do not allege that they would have behaved any differently if SPS had not allegedly misrepresented the investor guidelines, they have not alleged that the misrepresentation was "deceptive" within the meaning of Chapter 93A.

In addition, to state a claim under Chapter 93A, a plaintiff must allege "a causal connection between the deception and [Plaintiffs'] loss and that the loss was foreseeable as a result of the deception."  Iannacchino v. Ford Motor Co., 888 N.E.2d 879, 886 n.12 (Mass. 2008).  Here, the Verified Complaint did not allege that the SPS' representation regarding their

eligibility for a HAMP modification caused any loss because they have not established that, absent the representation, they would have or should have been approved for a modification. Accordingly, Counts II and IV of the Verified Complaint, to the extent they are based on SPS' alleged misrepresentation of their eligibility for a modification under the investor guidelines, fail to state a claim.

2.  Motion for Leave to File Proposed Amended Complaint

Plaintiffs seek to file a Proposed Amended Complaint [#28-1] that alleges a single cause of action for violation of Chapter 93A based on the "conclusion that Defendant misrepresented the investor loan modification guidelines" reached by Plaintiffs upon review of the "Prospectus Supplement," and SPS' failure to respond to Plaintiffs' Chapter 93A demand letter.  See Proposed Am. Compl. ¶¶ 23, 26.  The Proposed Amended Complaint alleges no new facts other than that "Plaintiffs came to the conclusion that SPS deliberately misrepresented the investor's guidelines in order to pursue the capture of lucrative mortgage servicing fees which accompany foreclosure proceedings."  Id. ¶ 10.  In the absence of any new factual allegations, however, the "conclusion" that SPS lied about their eligibility for a modification remains an unsupported one for the reasons described above.  Moreover, the new Chapter 93A cause of action based on the same alleged misrepresentation fails to state a claim because the Proposed Amended Complaint still fails to sufficiently allege that this conduct was false and deceptive or that it was casually connected to any loss suffered by Plaintiffs.  In addition, a failure to respond to a Chapter 93A demand letter is not itself a violation of Chatper 93A.  See Dawe v. Capital One Bank, 2007 WL 3332810, at *1 n.2 (D. Mass. Oct. 24 2007) (citing Heller v. Silverbranch Constr. Corp., 382 N.E.2d 1065, 1070 (Mass. 1978).  Accordingly, because the Proposed Amended Complaint fails

to allege any new facts, its "new" cause of action under Chapter 93A still fails to state a claim, and the motion to amend is denied as futile.

IV.     <u>Conclusion</u>

For the foregoing reasons, the <u>Motion to Dismiss</u> [#6] is ALLOWED and Plaintiffs' <u>Motion for Leave to File Proposed Amended Complaint</u> [#28] is DENIED.

IT IS SO ORDERED.

Dated: February 24, 2016                              <u>/s/ Indira Talwani</u>
                                                      United States District Judge